Mr. Marshall, the Almighty Supreme Court has reconvened. The Almighty Supreme Court has reconvened. Our next case on the call of the dacket is Agenda Number 3, Case Number 115-175, People v. Pikes. Counsel for the appellant, please proceed. Good morning, Chief Justice Kilbride, Honorable Members of this Court. I am Cook County Assistant State's Attorney Annette Collins, and I represent the people of the State of Illinois in the matter before this Court. This case is about relevant, admissible evidence concerning two specific related events. The first event directly preceded the charged drive-by shooting in this case and set in motion a chain of events that culminated in the commission of the drive-by shooting by both co-defendant and defendant in this case. It was the sole catalyst for that drive-by shooting, without which the charged shooting would never have happened. This relevant evidence of the first incident in this case not only explained the context in which the drive-by shooting had occurred, but it also provided direct proof of the primary shared motive for co-defendants and defendants' joint commission of the charged crime. Even though it was only co-defendant who had committed the earlier crime in the scooter shooting incident in this case, it was relevant to defendants' prosecution, because after that event, co-defendant recruited defendant, told him about it, and the two then shared joint motive in committing the joint enterprise drive-by shooting crime in this case. It only occurred one day before the charged defense, and it was inextricably tied to that charged defense. Let me ask a sort of foundational question, because I think you have a lot of ideas of what you just said. There are a lot of ideas that were included in that. I understand that the Illinois rules of evidence had not been adopted when this event took place, but certainly that's a place for us to go to talk in terms of some framework about evidence in Illinois. So I'd like to start with the Article IV, Relevancy and its Limits, as it's titled. And I really have two questions to begin with. The first one is the definition of relevant evidence. Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. So if we use that definition of what is relevant, my question is twofold. One, what is the fact that is of consequence to the determination of the action, whether it's probable or less probable, more probable or less probable? What is the fact that this evidence is going to? And secondly, specifically, can you tell me how this evidence tends to make that the existence of that fact more probable? What is the fact and how does this evidence prove it? The fact is motive. This Court has said that in every murder prosecution, motive is highly probative and relevant. So that's the fact that we're going to be focusing on, not context or anything else, we're going to be looking at just motive. I'm not even going to stop there, Justice Tice, because this particular fact pattern and the earlier incident also explains to the trier of fact, in this case the jury, the context in which the drive-by murder occurred. The otherwise inexplicable act is explained to the jury because the jury has then provided information as to how this chain of events is set in motion. And again, in addition to motive being a relevant consideration for the trier of fact, this context is significant in this case. This Court, among many others, has noted that crimes do not happen in a vacuum. And in order to present a compelling case to the trier of fact, the State must present all of the circumstances so the jury is provided a correct understanding of all the surrounding related circumstances in the commission of the crime. So context is the kind of fact that Rule 401 is talking about? Absolutely. Absolutely. And how does this evidence tend to prove motive? It directly proves motive. It gives a reason for the defendant in this case to actually commit the drive-by shooting. It is the specific and sole reason why the defendant was recruited to engage in the planning and execution of the drive-by murder along with his co-defendant.  Even though the defendant didn't commit or was part of that earlier crime, it's absolutely relevant to the prosecution of this defendant. Is there evidence in the record that the defendant was motivated, if I may use that word, by the scooter incident? Absolutely. The record is replete with evidence. There's eyewitness testimony that was that these witnesses were in the presence of both defendant and co-defendant when both defendant and co-defendant made statements reflecting how in that earlier scooter shooting the defendant, co-defendant had been injured and wanted revenge specifically against Quintez Robinson. Defendant was present at that time and because he was present when the co-defendant was discussing it and he took part with the co-defendant in the subsequent drive-by shooting, it is imputed to him. In fact, the trial court here basically held that defendant had adopted that motive because there was no other reason for the defendant to be committing the charge drive-by shooting in this case. It is because of its relevance in this case and not as its character as another crime that it was missable and not barred by that doctrine. The problem with the appellate court decision in this case is it very narrowly construed the other scooter shooting incident as a typical or traditional other crime, which led it to the mistaken impression that in order for it to come in in defendant's trial, it needed to have been committed by the defendant. Ostensibly, the appellate court looked to this Court's decision in Thingvolt as support for that holding. But Thingvolt does not support the application of the other crimes doctrine, particularly the manner in which the appellate court used it in this particular case. Thingvolt was not a joint enterprise case. It was a straightforward case involving a defendant who committed a prior unrelated crime, and the State sought to use that prior unrelated crime that was similar to the charge defense as proof that that defendant committed the charge defense. The problem with the State's theory in Thingvolt was that the State didn't have any evidence that the defendant had committed that prior crime. So it's not unsurprising that this Court in Thingvolt said that before evidence of other crimes, excuse me, before evidence of other crimes committed by the defendant can be admitted, the State must first show that a crime took place and the defendant committed it. In that specific factual and legal context, that statement makes perfect sense. It does not, however, translate to the instant set of facts. The instant set of facts involves a prior event, the relevance of which didn't depend on defendant committing it. That prior act's relevance is derived from defendant's knowledge of it. As this Court has stated on multiple occasions, motive evidence is relevant, and if the State wants to prove facts that supposedly constitute motive, it must show that the accused knew of those facts. That's exactly what we did in this case. We proved through competent witness testimony and co-conspirator statements that the defendant not only knew about that prior event that the co-defendant was part of, but actually agreed with his co-defendant to retaliate in response to that earlier incident by committing the charge of drive-by shooting here. Has the State's position evolved over time from the time of the trial through the other crime, typical other crime to an intrinsic crime or just a general relevancy? And I point also to the fact that there was an instruction given, a typical instruction given on other crimes when the State conceded the defendant did not commit the other crime. Why was that instruction given? All right. I'll start with the instruction. The instruction, excuse me, was given because in this case it wasn't just the prior incident that was an other crime satelliting around this set of circumstances. The defendant and the co-defendant used the co-defendant's jiggler key to steal a car. That theft of the car and that car was used to commit the drive-by shooting. So there was evidence of another crime in this case in addition to the charge of defense and in addition to the precipitating scooter shooting event which caused this chain of motion to be set, set in motion. Excuse me. As to your first question about whether the State has changed theories, we titled our motion in the circuit court a motion to admit prior bad acts and to admit other crimes. That motion applied to both co-defendant and defendant because they were jointly indicted in this case. They also received joint trials that were severed. But the content of that motion and the arguments that we presented to the circuit court in this case clearly argued that this was motive evidence and contextual evidence. So we have never changed our theory, its foundational basis. We've always maintained that the relevance of this evidence derived from defendant's knowledge of the prior crime, not his commission of it. And therefore, it was not technically an other crime by the very terms of that doctrine, but rather simply relevant evidence establishing both motive and the context in which the crime had occurred so the jury could understand why it happened. Now, the trial court's admission of the evidence in this case was wholly proper and fully supported by this court's case law dating decades as we presented in our briefs. It was relevance, its relevance to motive was unquestioned, but it was also admissible because it was related to the charged crime. And this concept of related evidence finds its way through this court's jurisprudence for almost a century. Whether it's called continuing narrative, inextricably intertwined, related evidence or intrinsic, at bottom it is a recognition that the other crimes doctrine itself concerns unrelated crimes committed by a defendant to basically establish the character of the defendant to commit the charged crime. It can either be used properly in the case to prove motive, identity, intent, etc., or improperly to prove propensity. Those characteristics are not at play when we're dealing with related evidence. It's not evidence of a completely separate crime happening at a completely different time for a completely different purpose, such that its use as propensity evidence is risky and dangerous. On the contrary, a related crime is so much part of the charged crime that it doesn't carry that risk of propensity. How is this related? Kennedy, how do you respond to the argument, and I think the Defendant makes it in his brief, that intrinsic evidence that you advocate conflicts with the ordinary rules of evidence? It does not. 404B. My understanding of intrinsic evidence does not conflict with the rules of evidence. The rules of evidence straightforward say that relevant evidence is admissible absent some bar. If the other crimes does not bar that evidence, then the evidence should be subjected to the typical probative prejudicial balancing test. Intrinsic evidence or related events as part and parcel of the charged crime to explain the context in which it has occurred is not contrary to our rules. Our rules have codified and are essentially corollaries and parallels to the common law. There's no deviation. So we would disagree with that position. And, in fact, if we take a look at the series of cases that this Court has issued over decades, it reads in typical fashion based on the nature of each case. Some cases involve related evidence that are very, very closely tied in time and place. Other cases in that spectrum deal with crimes that are further apart but related nonetheless because of some other nexus and connection. Within this spectrum, the instant case does fall. But the one commonality in all of these cases is the fact that all recognize that the other crimes doctrine addresses only those crimes committed by the defendant that are unrelated to the charged offense. The more recent cases, Morales, Rutledge, Manuel, Figueroa, among others that discuss whether or not this is an exception to the other crimes doctrine or outside its reach, they all recognize the significance of related events in terms of admissibility of evidence. These are the norm. It's the appellate court decision in this case and another decision where PLA is pending in People v. Carlos Lopez, two decisions from the Illinois Appellate Court First District. Those are the outliers. Those are the decisions that we are seeking to reverse. In particular ---- The scooter incident, as you called it, is intrinsic to the drive-by shooting. Clearly they, I think early in your introduction, you said they happened at the same time or you had a pretty strong statement in terms of timeliness. And obviously, they didn't happen simultaneously. They're separated by at least a day. Yes. So my question to you is about this idea of on the spectrum as you describe it, where an incident that is not happening simultaneously, when that would be closely enough related to the crime that is on trial, and when it's too remote. How do we determine that? That, Your Honors, would be a gatekeeper role and it would be dependent exclusively on the facts and the evidence. The facts and the evidence in each individual case are of paramount importance in an assessment such as this regarding the admissibility of this type of evidence. The State, however, has to prove a nexus. So it wouldn't just be by the State's choice and whim that they want to present evidence of another crime that they believe might be related. There has to be concrete proof and showing. The State has to bear the burden of that nexus. By example, in this case we did by showing co-conspirator statements that occurred between the scooter shooting incident and the drive-by shooting that reflected that the two events were connected. Because in discussing the earlier incident, the defendant and co-defendant planned the second incident. So the motive piece is what overcomes this problem of remoteness. I mean, obviously the facts in this case is that there's a longstanding gang war. Sure. And there certainly could have been an event that occurred a year before, two years before, that one might make an argument that that precipitated this specific event. At some point there has to be a line that's cut off. Absolutely. And you're saying that only if there is something else rather than just this long narrative, that if there's a nexus, there has to be a nexus between the event and the crime charge. Is that what you're saying? Absolutely. And that nexus is basically what establishes its relevance as to this prosecution. It has to be relevant. As Your Honor pointed out very early on with respect when you pointed to the rules of evidence. In order to establish that relevance, we have to connect it to the charged crime. And we do that with a nexus via testimony, statements, observations by witnesses. This case is the illustrative example of how it's done. We didn't just pick at random a shooting that happened on the streets of Chicago the day before a drive-by shooting. We connected it because the witnesses reflected that both defendant and co-defendant sole and exclusive motive in committing the drive-by was because the co-defendant had been injured and wanted revenge and retaliation. Your Honors, the appellate court's decision in this case relying on the Thingvold decision must be reversed. Thingvold is not a broad statement that every case that involves extrajudicial charges has to be committed by the defendant in order for it to be relevant. Thingvold wasn't a joint conspiracy case. It didn't involve co-defendants. And it has no application to the instant set of facts. It was the appellate court's exclusive and narrow reliance on that decision that caused it to ignore the real relevance and proof of that relevance and nexus in this case. For this reason and those expressed in our brief, we would ask that this court reverse the appellate court's decision and affirm the admission of the evidence as allowed by the trial court in this case. Good morning, Chief Justice, Your Honors, and may it please the Court. My name is Amanda Ingram, and I represent Keith Pikes. The motive for the drive-by shooting was not that co-defendant Donegan had previously shot at Quintez Robinson. The motive for the shooting in the charge defense in this case was the fact that he'd gotten hit by the car. There was not one single incident that was motive. There were two separate incidents that led to the shooting in this case. Regardless, Ms. Ingram, you don't dispute, do you, that the evidence was not given to show a defendant's propensity to commit crime? It was allegedly there to show motive. Okay. And isn't propensity really the only reason for generally disallowing other crimes evidence? Well, there has to be, it has to come in as either relevance or identity or modus operandi of one of those things. In this case, the state was wanting to show it for motive evidence, but it's not relevant for motive. There were several events that precipitated the drive-by shooting in this case. Let me just, before you get going, you're not relying then on Thingol? We are relying on Thingol, but aside from the fact that defendant did not commit or participate in the prior crime, the prior shooting is simply not relevant to show Pike's motive for participating in the later Mosley shooting. Okay. Because in Thingol, there wasn't any connection between the defendant and the other crime. And they're not disputing here that there was no connection between the defendant and the other crime, right? So we have quite a different situation here. So then you would agree then that the prime effort of this court is to determine whether or not this was relevant as motive evidence? Well, it certainly is a major part of the analysis because in order to, this was another crime. This was not intrinsic to the Mosley shooting at all. The prior shooting happened at a different time, at a different place, different victim, different motivations. There's no way it was intrinsic to the charge defense. So as another crime, there are long-held rules for the admission of other crimes. In this case, one, it has to be relevant to prove something of the charge defense, and two, it has to be connected to the defendant in some way. And the State has met neither of those standards. As I was saying, there were several events that preceded the drive-by shooting in this case. There was a, the gang war erupted over the death of Victor Parsons. That gang war was ongoing in the time of August 2006. Quintez Robinson rode a scooter into opposing gang territory. Donegan then shot at Robinson for riding into his territory. Then Cairo, who was driving a car behind Robinson, hit Donegan with his car. It was this final event, Cairo hitting Donegan with the car, which led to Donegan committing the shooting two days later. That is what motivated him to commit the shooting. Not the fact that he had previously shot at Robinson, but the fact that he had gotten hit with the car. And although the two events did occur one after the other, there were still different motivations. Robinson shot, I mean, excuse me, Donegan shot at Robinson because he rode the scooter into his territory. And Cairo hit Donegan, excuse me, with the car as a result of the shooting. The prior shooting doesn't prove the later shooting. It doesn't make sense that Donegan would go out and commit the Mosley shooting as some sort of revenge for having previously committed the Robinson shooting. The motive here, there's no, the defendant's position is not that the State can't make a story and prove motive at all. But the motive has to be relevant to the charge defense. The charge defense here is the Mosley shooting, and the reason that it happened was because Donegan got hit with the car, not because Donegan had previously shot at Robinson. So you would agree that evidence of the scooter being hit by the car was properly admissible? Sure. Getting hit by the car was the evidence throughout the trial that that was the motive. But the shooting, the reason that Cairo hit Donegan with the car doesn't prove why my client participated in the later shooting. If they had a shared motive, that shared motive was directly related to him getting hit with the car. They wanted retaliation for him getting hit with the car, not for him having previously shot at somebody. Of course, the State is saying they want to tell the rest of the story. It's how it all happened. What is the prejudice to your client of somebody else shooting? Your Honor, there's a great deal of prejudice here. For one thing, this Court has long held that evidence of other crimes is very prejudicial when it's improperly admitted. Here, Ikes and Donegan had a shared gang membership, so there was a risk that there would be a guilt by association inference. There was also a great deal of evidence presented about this prior shooting, creating the risk of a mini-trial. But most importantly, Your Honors, this was a shooting case, and the State wanted to introduce evidence of yet another shooting that doesn't prove why the shooting at issue here happened and was totally unconnected to Mr. Pikes. That's extremely prejudicial to Mr. Pikes. And as the lower court in this case stated, to be made to bear the slightest connection to a crime committed by another to which one did not even have forehand knowledge cannot be said to be harmless error. The prior shooting, that could have been charged as an attempt murder. This was a serious other crime. This isn't like the other crime, the Jiggler P. stolen car aspect of the case. Is that another crime? Sure, but this is a shooting case. And even if the instruction was necessary for that aspect of the case, it was equally applicable to this aspect of the case. There was no footnote in that jury instruction telling the jury that, oh, this instruction only applies for the stolen car issue. It doesn't apply for this prior shooting issue. Would it be improper to show that there was a gang war going on? Well, they can show that there's a gang war going on without bringing in evidence of co-defendants' prior shooting. They had the evidence that, through multiple witnesses, that Victor Parsons died and a gang war erupted over that. So the background that there was a gang war going on at the time, sure, that's fine. But that's not a specific other crime that's connected to the co-defendant that, again, doesn't prove why the shooting in the charge defense happened and isn't connected to the defendant. Did the defendant object to the instruction? He did. He did? Yes. Oh, I'm sorry. No, I'm sorry. No, I'm sorry. Not the instruction. The instruction was agreed. It was an agreed instruction. But at that point, Your Honor, the defendant had objected to this evidence being admitted against his client. So he was, you know, at that point, he's got to mitigate the damage that this other evidence is going to do to his client, hence the instruction. Did he ask for clarification that it should apply to the car theft as opposed to shooting? No, sir, he did not. Okay. If there are no further questions, Your Honors, I would just like to close by saying that this was another crime. This was not intrinsic to the charge defense. There are long-held rules for the admission of other crimes. And the other crimes' evidence at issue here did not meet those standards. Ultimately, Cairo's motive for hitting Donegan with the car was not relevant to show Pikes' motive for participating in the later shooting of Mosley. Pikes was prejudiced by the admission of other crimes, and this Court should affirm the holding of the appellate court. Thank you very much. Thank you. Your Honors, defense counsel concedes that the evidence is relevant, that it proves motive. Defense counsel only complains about the shooting aspect of it. Yet defense counsel proposes that the shooting of an entirely different individual, Victor Parsons, could have been the defendant's motive. So I'm not sure where the shooting, whether Victor Parsons or at Quintus Robinson, really prejudiced defendant in this case. The jury in this case absolutely with certainty knew the defendant was involved in that prior shooting. They were told in opening statement by both the prosecutor and defense counsel. The evidence absolutely made no mistake about the fact that the defendant was involved. And in closing argument, the focus by the prosecution was defendants coming in in the middle of this series of events and adopting his co-defendant's motive and assisting him in the commission of the drive-by. There was absolutely no risk of prejudice in this case. Redaction of the evidence or sanitation of a series of events in this case does violence to the truth. And in this case, the defense counsel never said, oh, I want the car accident in, but not the shooting in. That is an appellate argument. It is an appellate argument that failed in the co-defendant's appeal in the very    case. The co-defendant who committed that other shooting, the appellate court rejected his claim that there should have been a sanitizing action by the trial court to remove the shooting, not the car accident. This case involves not a series of unrelated events that are far apart in time that have no connection. This is about Robinson instigating a response by riding his scooter through rival gang territory. He got that response when co-defendant ran into the street and tried to shoot at him. Co-defendant then was hit by the car of other rival gang members following Robinson. And then co-defendant recruited defendant to help him get revenge. They stole a car. They drove into rival gang territory. And not coincidentally, they shot at a group of individuals containing the very same rival gang members that were involved in the precipitating catalyst event. And also not coincidentally, the victim, Victor Parsons, excuse me, Lorne Mosley Jr. in this case, was shot and killed because he was standing directly next to Quintez Robinson, the man who rode the scooter, the man who started this series of events. And in action. We would ask that this Court reverse the appellate court decision. It is an outlier decision. It has no support in this Court's jurisprudence. And it sets a bad precedent restricting otherwise relevant and probative evidence that's necessary. I have just one question. It's on the use of the intrinsic evidence analysis. The Seventh Circuit in United States v. Gorman said that they characterized that as overused, vague, and quite unhelpful. Do we factor that into our decision in evaluating the usefulness of intrinsic extrinsic evidence? No, I do not think so, Justice Freeman. And the reason is because that doctrine, as the Seventh Circuit has understood it, was a fine distinction that traditionally existed in the Federal courts. But the Seventh Circuit, not the other circuits, but the Seventh Circuit has decided to abandon it. Not because there's anything analytically infirm about it, but rather because the manner in which it was being used in the district courts had caused it to become muddied and vague. There's indications in the Seventh Circuit case law that the prosecution was overreaching in trying to present evidence and putting forth evidence that really wasn't inextricably intertwined actual evidence, but portraying it as much. And then the gatekeeper wasn't holding fast to the rules of evidence and allowing it in. So you're saying that they're just wrong, not that we should not give any weight to it? They're not wrong in their set of circumstances. We are not suffering any of the same concerns or problems in the manner in which it was being followed and used by the circuit courts. There is no corollary or parallel in our State courts to give rise to the concerns that the Federal court has had. The Federal court, the Seventh Circuit's problem is not with the doctrine, but the manner in which it was being used. Our doctrine is being used in a studied, straightforward, consistent manner where our circuit courts are holding our trial assistants and our litigants to proving the relevance. There's no reason to follow the Federal courts and abandon an otherwise valid, useful doctrine that allows for the State, or any litigant for that matter, to present evidence that's relevant that shouldn't be barred by the other crimes doctrine because it is not, at heart, another crime. Thank you. Thank you. Thank you. Case number 115171, People v. Pikes, is taken under advisement. It's agenda number three. Ms. Collins, Ms. Ingram, we thank you for your arguments this morning.